STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527
     Facsimile: (213) 894-6269
     E-mail:   scott.paetty@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

```
                               FILED
                       CLERK, U.S. DISTRICT COURT

                          8/23/2022

                       CENTRAL DISTRICT OF CALIFORNIA
                       BY: ____jb____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR  2:22-cr-00388-SVW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT MANUEL ASADURIAN |
| v. | |
| MANUEL ASADURIAN, aka "Manny," | |
| Defendant. | |

    1.   This constitutes the plea agreement between MANUEL
ASADURIAN, also known as "Manny," ("defendant") and the United States
Attorney's Office for the Central District of California (the "USAO")
in the investigation of defendant's submission of false and
fraudulent applications for Paycheck Protection Program loans and
Economic Injury Disaster Loans during the Covid-19 pandemic.  This
agreement is limited to the USAO and cannot bind any other federal,
state, local, or foreign prosecuting, enforcement, administrative, or
regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a one-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to

1  satisfy defendant's payment of the full financial obligation,

2  including referral to the Treasury Offset Program.

3       i.   Complete the Financial Disclosure Statement on a form

4  provided by the USAO and, within 30 days of defendant's entry of a

5  guilty plea, deliver the signed and dated statement, along with all

6  of the documents requested therein, to the USAO by either email at

7  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

8  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

9  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

10 criminal debt shall be assessed based on the completed Financial

11 Disclosure Statement and all required supporting documents, as well

12 as other relevant information relating to ability to pay.

13      j.   Authorize the USAO to obtain a credit report upon

14 returning a signed copy of this plea agreement.

15      k.   Consent to the USAO inspecting and copying all of

16 defendant's financial documents and financial information held by the

17 United States Probation and Pretrial Services Office.

18      l.   To the entry as part of defendant's guilty plea of a

19 personal money judgment of forfeiture against defendant in the amount

20 of $1,071,222 which sum defendant admits was derived from proceeds

21 traceable to the violations described in the factual basis of the

22 plea agreement.  Defendant understands that the money judgment of

23 forfeiture is part of defendant's sentence, and is separate from any

24 fines or restitution that may be imposed by the Court.

25      m.   With respect to any criminal forfeiture ordered as a

26 result of this plea agreement, defendant waives (1) the requirements

27 of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

28 notice of the forfeiture in the charging instrument, announcements of

the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal and equitable defenses to the money judgment of forfeiture in any proceeding on any grounds including, without limitation, that the money judgment of forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that entry of the money judgment of forfeiture is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

                        THE USAO'S OBLIGATIONS

     3.   The USAO agrees to:

          a.   Not contest facts agreed to in this agreement.

          b.   Abide by all agreements regarding sentencing contained in this agreement.

          c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

          d.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range provided that the offense level used by the Court to determine that range is 24 or higher and provided that the Court does not depart downward in offense level or criminal history category.

                                  4

For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

e.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. § 1028A arising out of defendant's submission of an application for an Economic Injury Disaster Loan in the amount of $71,200, on or about June 20, 2020, in the name of another individual, E.A.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSE</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in count one of the information, that is, conspiracy to commit wire fraud affecting a financial institution, in violation of Title 18, United States Code, Section 1349, the following must be true:

<u>First</u>, beginning by at least in or about April 2020, and continuing to at least in or about January 2021, there was an agreement between two or more persons to commit wire fraud affecting

a financial institution, in violation of Section 1343 of Title 18 of the United States Code; and

Second, the defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

The object of the conspiracy charged in count one of the information is wire fraud affecting a financial institution.  In order for a person to be found guilty of wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343, the following must be true:

First, the person knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.  Deceitful statements of half-truths may constitute false or fraudulent representations;

Second, the scheme or plan affected a financial institution as defined by 18 U.S.C. § 20;

Third, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, another person to part with money or property;

Fourth, the person acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fifth, the person used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

<u>PENALTIES AND RESTITUTION</u>

5.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States

6

Code, Section 1349 is:  30 years' imprisonment; a five-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the counts.  The parties currently believe that the applicable amount of restitution is approximately $1,071,222 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could

result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration

status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

The Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") program were established by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, a federal law enacted in March 2020, and provided emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  PPP loans were obtained by submitting applications to participating financial institutions, which administered the loans. EIDL loans were obtained by submitting applications to the SBA, which disbursed the loans through financial institutions.  The PPP and EIDL programs were funded by U.S. taxpayers.  In order to obtain and retain funds distributed through the PPP and EIDL programs, recipients were required to certify that they would use the funds to pay for specified permissible business expenses, for example, payroll and certain operating expenses, and to use the funds for those purposes and no others.

1    Beginning in April 2020, and continuing through in or about
2    January 2021, in Ventura County within the Central District of
3    California, and elsewhere, defendant agreed with co-conspirator
4    J.S.H., a loan consultant ("Loan Consultant 1"), and others to submit
5    fraudulent loan applications to lenders and financial institutions
6    affiliated with the PPP and EIDL programs.  This included Bank A, a
7    federally-insured SBA Preferred Lender based in Pennsylvania, which
8    participated in the PPP program as an SBA Preferred Lender to small
9    businesses.

10    The false and fraudulent information defendant agreed with co-
11    conspirator J.S.H and Loan Consultant 1 to provide to PPP lenders and
12    the SBA included:  loan applications that contained false
13    representations regarding the number of employees and payroll of the
14    businesses purportedly applying for the loans and false
15    certifications regarding the use of the requested loan proceeds, all
16    of which information was material to the SBA and its lenders.
17    Defendant conspired with Loan Consultant 1 to submit false and
18    fraudulent information in PPP applications to PPP lenders in order to
19    induce PPP lenders to wire funds into bank accounts controlled by
20    defendant; in exchange, defendant agreed to provide Loan Consultant 1
21    with a portion of the fraudulent loan proceeds he received.

22    As part of the fraudulent scheme, in or about April or May 2020,
23    co-conspirator J.S.H. instructed defendant to provide co-conspirator
24    J.S.H. and Loan Consultant 1 with tax identifiers, bank account
25    numbers, and other details of various companies controlled by
26    defendant for use in PPP and EIDL loan applications.  Defendant
27    subsequently had a telephone conversation with Loan Consultant 1
28    wherein defendant agreed to pay Loan Consultant 1 a fee of between 5%

10

and 15% of proceeds obtained for each PPP and EIDL application that Loan Consultant 1 submitted or caused to be submitted on behalf of defendant and companies controlled by defendant.  To facilitate completion of a fraudulent PPP loan application submitted for LTL Enterprises, a company of which defendant was the sole proprietor, defendant caused co-conspirator J.S.H. and Loan Consultant 1 to create false and fraudulent IRS tax forms that defendant knew would be used as part  of the application, including a false IRS Schedule C, a false IRS Form W-3, a false IRS Form 940, and a false IRS Form 941.

On or about July 15, 2020, defendant caused co-conspirator J.S.H. and Loan Consultant 1 to submit a PPP loan application in the name of Manny Asadurian, dba LTL Enterprises, to Bank A (the "July 2020 LTL PPP application") seeking a PPP loan in the amount of $292,122, which application contained the following representations about LTL Enterprises that defendant knew at the time were false: (a) LTL Enterprises had 20 or 30 employees; (b) LTL Enterprises had $116,849 in monthly payroll in tax year 2019; (c) LTL Enterprises had $2,531,940 in annual gross receipts, $1,857,319 in annual gross income, and $695,651 in net profit for the tax year 2019; and (d) LTL Enterprises paid $1,286,112 in annual wages to employees.

On or about July 17, 2020, based on the material misrepresentations in the July 2020 LTL PPP application, Bank A transferred approximately $292,122 via interstate wire into a bank account in the name of LTL ENT. LLC, dba Redline Performance USA, held at JPMorgan Chase Bank, N.A. ending in 0858, which defendant controlled.

As a part of the conspiracy described above, defendant also knowingly submitted and caused to be submitted false and fraudulent information, including false payroll expenses, false IRS tax forms, and misrepresentations regarding the operational status of the businesses in the PPP and EIDL applications described in the table below.  Defendant made these false and fraudulent statements knowing they were material, and in order to induce the SBA, and the PPP lenders and financial institutions described in the table below, to approve the EIDL and PPP loans and cause the loan proceeds to be wired to bank accounts under defendant's direct or indirect control for his personal use and benefit, which use defendant knew was impermissible under the terms of the PPP and EIDL programs.

| Borrower | Type | Bor. Tax ID | Name | Prin Tax ID | Loan No. | Lending Bank | Application Amount | Funded Loan Amount | Date Application Submitted |
|---|---|---|---|---|---|---|---|---|---|
| LTL Ent. LLC | PPP | 83-4053126 | Manuel Asadurian | 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 | 49289874-04 | Fountainhead SBF LLC | $ 108,100 | $ 108,100 | 5/11/2020 |
| Redline Performance | PPP | 84-4864721 | Manuel Asadurian | 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 | 87544379-01 | Fountainhead SBF LLC | $ 142,900 | N/A | 6/18/2020 |
| Manuel Asadurian | PPP | 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 | Manuel Asadurian | 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 | 94846480-01 | Customers Bank | $ 292,122 | $ 292,122 | 7/15/2020 |
| LTL Ent. LLC | PPP | 45-3663324 | Manuel Asadurian | 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 | 42863081-09 | Cross River Bank | $ 285,400 | $ 285,400 | 7/16/2020 |
| | | | | | | | | | |
| LTL Ent. LLC | EIDL | 83-4053126 | Manuel Asadurian | 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 | 36005961-05 | SBA | $ 16,900 | $ 16,900 | 4/20/2020 |
| Manuel Asadurian | EIDL | 56-3024796 | Manuel Asadurian | 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 | 33047797-14 | SBA | $ 15,000 | $ 1,000 | 6/16/2020 |
| LTL Ent LLC | EIDL | 83-4053126 | Manuel Asadurian | 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 | 33047823-25 | SBA | $ 92,000 | N/A | 6/16/2020 |
| Redline Performance | EIDL | 84-4864721 | Manuel Asadurian | 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 | 33049047-07 | SBA | $ 146,500 | $ 146,500 | 6/16/2020 |
| Emanuel Asadurian | EIDL | 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 | Emanuel Asadurian | 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 | 33056557-68 | SBA | $ 71,200 | $ 71,200 | 6/20/2020 |
| LT4 Enterprise | EIDL | 85-1731190 | Manuel Asadurian | 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 | 33137182-36 | SBA | $ 150,000 | N/A | 8/17/2020 |

| Diamond A Motorsports | EIDL | 85-1720377 | Manuel Asadurian | 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 | 33137177-77 | SBA | $ 150,000 | $ 150,000 | 8/29/2020 |
| Diamond A Motorsports | EIDL | 85-1720377 | Manuel Asadurian | 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 | 33167218-28 | SBA | $ 150,000.00 | N/A | 1/24/2021 |

The conspiracy to commit wire fraud described above in which defendant participated caused an intended loss of at least $1,620,122 and actual loss of $1,071,222

SENTENCING FACTORS

11. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss Between $1.5 million and $3.5 million | +16 | U.S.S.G. § 2B1.1(b)(1)(J) |
| Sophisticated Means | +2 | U.S.S.G. § 2B1.1(b)(10) |
| Unauthorized Use of Means of Identification | +2 | U.S.S.G. § 2B1.1(b)(11)(C)(i) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.   The right to persist in a plea of not guilty.

      b.   The right to a speedy and public trial by jury.

      c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

      d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.   The right to confront and cross-examine witnesses against defendant.

      f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

17.   Defendant agrees that, provided the Court imposes a total term of imprisonment on the count of conviction of no more than the high-end of the Sentencing Guidelines range calculated by the Court corresponding to an offense level of 24 and criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount

15

and terms of any restitution order, provided it requires payment of no more than $1,071,222; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

19.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than low-end of the Sentencing Guidelines range calculated by the Court corresponding to an offense level of 24 and criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $1,071,222.

1

## RESULT OF WITHDRAWAL OF GUILTY PLEA

2       20.  Defendant agrees that if, after entering a guilty plea

3  pursuant to this agreement, defendant seeks to withdraw and succeeds

4  in withdrawing defendant's guilty plea on any basis other than a

5  claim and finding that entry into this plea agreement was

6  involuntary, then (a) the USAO will be relieved of all of its

7  obligations under this agreement; and (b) should the USAO choose to

8  pursue any charge that was either dismissed or not filed as a result

9  of this agreement, then (i) any applicable statute of limitations

10  will be tolled between the date of defendant's signing of this

11  agreement and the filing commencing any such action; and

12  (ii) defendant waives and gives up all defenses based on the statute

13  of limitations, any claim of pre-indictment delay, or any speedy

14  trial claim with respect to any such action, except to the extent

15  that such defenses existed as of the date of defendant's signing this

16  agreement.

17              ## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

18       Defendant agrees that if the count of conviction is vacated,

19  reversed, or set aside both the USAO and defendant will be released

20  from all their obligations under this agreement.

21                  ## EFFECTIVE DATE OF AGREEMENT

22       21.  This agreement is effective upon signature and execution of

23  all required certifications by defendant, defendant's counsel, and an

24  Assistant United States Attorney.

25                     ## BREACH OF AGREEMENT

26       22.  Defendant agrees that if defendant, at any time after the

27  effective date of this agreement, knowingly violates or fails to

28  perform any of defendant's obligations under this agreement ("a

17

breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

23. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under

18

the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

24.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

27.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

STEPHANIE S. CHRISTENSEN
Acting United States Attorney


_____          8/23/22
SCOTT PAETTY                               Date
Assistant United States Attorney

1

2  MANUEL ASADURIAN                              Date  8-18-2022
   Defendant

3

4  ELLYN S. GAROFALO                             Date  8/18/22
   Attorney for Defendant MANUEL

5  ASADURIAN

6

7                    CERTIFICATION OF DEFENDANT

8      I have read this agreement in its entirety.  I have had enough

9  time to review and consider this agreement, and I have carefully and

10 thoroughly discussed every part of it with my attorney.  I understand

11 the terms of this agreement, and I voluntarily agree to those terms.

12 I have discussed the evidence with my attorney, and my attorney has

13 advised me of my rights, of possible pretrial motions that might be

14 filed, of possible defenses that might be asserted either prior to or

15 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

16 of relevant Sentencing Guidelines provisions, and of the consequences

17 of entering into this agreement.  No promises, inducements, or

18 representations of any kind have been made to me other than those

19 contained in this agreement.  No one has threatened or forced me in

20 any way to enter into this agreement.  I am satisfied with the

21 representation of my attorney in this matter, and I am pleading

22 guilty because I am guilty of the charge[s] and wish to take

23 advantage of the promises set forth in this agreement, and not for

24 any other reason.

25

26 MANUEL ASADURIAN                              Date  8-18-2022
   Defendant

27

28

                             21

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MANUEL ASADURIAN's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

ELLYN S. GAROPALO                           8/18/22
Attorney for Defendant MANUEL               Date
ASADURIAN

22

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud Affecting a Financial Institution; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| MANUEL ASADURIAN, aka "Manny," | |
| Defendant. | |

The Acting United States Attorney charges:

COUNT ONE

[18 U.S.C. §§ 1349, 2(b)]

A.    INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

Defendant and the Relevant Entities

1.    Defendant MANUEL ASADURIAN, also known as "Manny," was a resident of Camarillo, California.

2.    Defendant ASADURIAN controlled a bank account in the name of LTL ENT. LLC, dba Redline Performance USA, held at JPMorgan Chase Bank, N.A. ending in 0858 (the "Chase 0858 account").

3.    Defendant ASADURIAN was the sole proprietor of the following California companies:  LTL Enterprises LLC, Redline Performance LLC, and Diamond A Motorsports.

4.    Loan Consultant 1 was an individual who worked at Company 1, a company based in New York that specialized in assisting small businesses with obtaining loans.

<u>The Paycheck Protection Program</u>

5.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

6.    In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the small business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One such certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments."  The applicant (through its authorized representative) was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges."  In the PPP loan application, the applicant

2

was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, the applicant was required to provide documentation showing its payroll expenses.

7.  A business's PPP loan application was received and processed, in the first instance, by a participating financial institution.  If a PPP loan application was approved, the participating financial institution would fund the PPP loan using its own monies.

8.  PPP loan proceeds were required to be used by the business on certain permissible expenses, namely, payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period of time and used at least a minimum amount of the PPP loan proceeds towards payroll expenses.

The Economic Injury Disaster Loan Program

9.  The Economic Injury Disaster Loan Program ("EIDL") was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

10.  The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

11.  To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross

3

revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020.  The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

12.  EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold, as described in paragraph 11 above.  Any funds issued under an EIDL loan were issued directly by the SBA.

13.  EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

Relevant Lending Institutions

14.  Bank A was a federally insured, SBA Preferred Lender and participated as a PPP lender to small businesses.

B.   THE OBJECT OF THE CONSPIRACY

15.  Beginning no later than in or around April 2020 and continuing until at least in or around January 2021, in Ventura County, within the Central District of California, and elsewhere, defendant ASADURIAN conspired with co-conspirator Jeffery Scott Hedges ("Hedges"), Loan Consultant 1, and with others known and

4

1  unknown to the Acting United States Attorney, to commit wire fraud

2  affecting a financial institution, in violation of Title 18, United

3  States Code, Section 1343.

4  C.   THE MANNER AND MEANS OF THE CONSPIRACY

5      16.   The object of the conspiracy was to be carried out, and was

6  carried out, in substance, as follows:

7          a.   Defendant ASADURIAN, co-conspirator Hedges, and Loan

8  Consultant 1, together with other coconspirators, would make, and

9  cause to be made, false statements to the SBA and federally insured

10  financial institutions, including Company 1, in connection with

11  fraudulent applications for PPP and EIDL loans for defendant

12  ASADURIAN's companies, including false representations regarding the

13  number of employees to whom the companies had paid wages, the amount

14  of payroll expenses for the companies, and false certifications that

15  the loans would be used for permissible business purposes.

16          b.   Defendant ASADURIAN, co-conspirator Hedges, and Loan

17  Consultant 1, together with other coconspirators, would

18  electronically submit, and cause to be submitted, false and

19  fictitious documents to the SBA and financial institutions, including

20  Bank A, in support of the fraudulent PPP and EIDL loan applications,

21  including false or fictitious tax documents, payroll records, and

22  bank records.

23          c.   Defendant ASADURIAN, co-conspirator Hedges, and Loan

24  Consultant 1 created and caused to be created, false and fraudulent

25  IRS tax forms, including IRS Form 940, IRS Form 941, IRS Form W-3,

26  and IRS Schedule C, corresponding to businesses controlled by

27  ASADURIAN, including LTL Enterprises LLC, Redline Performance LLC,

28  and Diamond A Motorsports, for inclusion in PPP and EIDL loan

5

applications in order to fraudulently inflate the number of employees and amount of payroll expenses and gross receipts associated with the companies.

d.    Defendant ASADURIAN, co-conspirator Hedges, and Loan Consultant 1 would direct that PPP and EIDL loan proceeds be deposited into bank accounts that defendant ASADURIAN controlled, including the Chase 0858 account.

e.    Defendant ASADURIAN and co-conspirator Hedges. would use the fraudulently obtained PPP and EIDL loan proceeds for their own personal benefit and for the benefit of their co-conspirators, including for expenses prohibited under the requirements of the PPP and EIDL programs, such as to make mortgage payments on a personal residence, to pay living expenses and medical expenses, and to purchase vehicles for personal use.

17.   From in or about April 2020 and continuing until at least in or about January 2021, in furtherance of the conspiracy, defendant ASADURIAN submitted and caused to be submitted fraudulent PPP and EIDL loan applications seeking approximately $1,620,122, and actually received approximately $1,071,222 in PPP and EIDL proceeds to which he was not entitled.

D.   OVERT ACTS

18.   On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant ASADURIAN, together with co-conspirator Hedges, and Loan Consultant 1, committed the following overt acts, within the Central District of California:

Overt Act No. 1:    In or about April or May 2020, co-conspirator Hedges instructed defendant ASADURIAN to provide co-conspirator Hedges and Loan Consultant 1 with tax identifiers, bank

account numbers, and other details pertaining to various companies controlled by defendant ASADURIAN for use in PPP and EIDL loan applications.

Overt Act No. 2:   In or about May 2020, during a telephone conversation with Loan Consultant 1, defendant ASADURIAN agreed to pay Loan Consultant 1 a fee of between 5% and 15% for each PPP and EIDL application that Loan Consultant 1 submitted or caused to be submitted on behalf of defendant ASADURIAN.

Overt Act No. 3:   In or around July 2020, defendant ASADURIAN caused co-conspirator Hedges and Loan Consultant 1 to create false and fraudulent IRS tax forms to be used in the submission of a fraudulent PPP loan application for Manny Asadurian dba LTL Enterprises, including a false IRS Schedule C, a false IRS Form W-3, a false IRS Form 940, and a false IRS Form 941.

Overt Act No. 4:   On or about July 15, 2020, defendant ASADURIAN caused co-conspirator Hedges and Loan Consultant 1 to submit a PPP loan application in the name of Manny Asadurian, dba LTL Enterprises to Bank A (the "July 2020 LTL PPP application") seeking a PPP loan in the amount of $292,122, which application: (a) falsely represented that LTL Enterprises had 20 or 30 employees; (b) falsely listed $116,849 in monthly payroll in tax year 2019; (c) falsely listed $2,531,940 in annual gross receipts, $1,857,319 in annual gross income, and $695,651 in net profit for the tax year 2019; and (d) falsely represented $1,286,112 in annual wages paid to employees.

Overt Act No. 5:  On or about July 17, 2020, defendant ASADURIAN, co-conspirator Hedges, and Loan Consultant 1 caused Bank A to transfer, via interstate wire, $292,122 into the Chase 0858

7

1  account based on the fraudulent July 2020 LTL PPP application that
2  the co-conspirators had submitted.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the conviction of defendant MANUEL ASADURIAN, also known as "Manny," of the offense set forth in Count One of this Information.

2.    Defendant ASADURIAN, if so convicted, shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses.

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant ASADURIAN, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.


STEPHANIE S. CHRISTENSEN
Acting United States Attorney


SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

SCOTT PAETTY
Assistant United States Attorney
Deputy Chief, Major Frauds Section