E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527
     Facsimile: (213) 894-6269
     E-mail:    scott.paetty@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-388-DSF |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT MANUEL ASADURIAN |
| v. | |
| MANUEL ASADURIAN,<br>   aka "Manny," | Hearing Date: February 13, 2023<br>Hearing Time: 8:30 a.m.<br>Location:    Courtroom of the<br>             Hon. Dale S. Fischer |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Scott Paetty, hereby submits its position regarding the sentencing of defendant MANUEL ASADURIAN ("defendant").

This position is based upon the attached memorandum of points and authorities, the Presentence Report disclosed by the United

//

States Probation Office (CR 26), the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 23, 2023           Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

*/s/ Scott Paetty*

SCOTT PAETTY
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

For the reasons set forth below, the government recommends a sentence of 51 months' imprisonment to be followed by a three-year term of supervised release, a restitution order in the amount of $1,071,222, and a special assessment of $100.

**I.   FACTUAL BACKGROUND**

**A.   The Fraudulent Scheme**

Between approximately April 2020 and January 2021, defendant MANUEL ASADURIAN ("defendant") conspired with Jeffrey Scott Hedges and a loan consultant to carry out a scheme to defraud the Small Business Administration ("SBA") and its affiliated lenders of approximately $1,620,122 in funds intended for COVID-19 pandemic relief.[1]  Through the use of defunct companies and falsified documents, defendant fraudulently obtained federal disaster relief funds from the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") program, which were programs aimed to help small businesses suffering from the economic impacts of the COVID-19 pandemic.  As part of the scheme, defendant applied for PPP and EIDL loans by making materially false representations about the entities' payroll, revenue, and operating expenses.  In furtherance of his fraud, and to further conceal the fraudulent proceeds, defendant also applied for and received funds related to an EIDL loan in the name of another person.  Defendant then misused the PPP and EIDL loan proceeds for his own personal benefit.

---

[1] Hedges has pleaded guilty to conspiracy to commit wire fraud affecting a financial institution and aggravated identity theft in related case, United States v. Jeffrey Scott Hedges, 22-85-DSF, and is scheduled to be sentenced on January 30, 2023.

Over the course of the scheme, defendant applied for a total of 12 loans totaling approximately $1,620,122 and in fact received approximately $1,071,222 in loan proceeds to which he was not entitled.  (PSR ¶¶ 11-19; Plea Agreement (CR 6) ¶ 10).)

**B.   Procedural History**

Defendant signed a plea agreement whereby he agreed to plead guilty to a single-count Information charging conspiracy to commit wire fraud affecting a financial institution, in violation of 18 U.S.C. §1343.[2]  (PSR ¶¶ 1-2.)  Defendant subsequently appeared before this Court on October 3, 2022 and entered a plea of guilty.  (CR 19.)

**II.  THE PRESENTENCE REPORT**

The Probation Office found that defendant's total offense level is 24, based on a base offense level of 7 (U.S.S.G. §§ 2X1.1(a), 2B1.1(a)(1)), a 16-level upward adjustment for a loss amount between $1,500,000 and $3,500,000 under U.S.S.G. § 2B1.1(b)(1)(I), a two-level upward adjustment for sophisticated means under U.S.S.G. § 2B1.1(b)(10), a two-level upward adjustment for the unlawful and unauthorized transfer or use of any means of identification under U.S.S.G. § 2B1.1(b)(11)(C)(i), and a reduction for acceptance of responsibility under U.S.S.G. 3E1.1(a)-(b).  (PSR ¶¶ 28-42.)  The government concurs in the Probation Office's calculation of defendant's total offense level.

The Probation Office calculated defendant's criminal history category as I based on zero criminal history points.  (PSR ¶ 47.) The government concurs in the Probation Office's calculation of defendant's criminal history.  With an offense level of 24 and a

---

[2] The government requests that the Court incorporate the plea agreement into the proceedings at the sentencing hearing.

criminal history category of I, defendant's applicable advisory guidelines sentencing range is 51-63 months. (PSR ¶ 96.)

**III. ARGUMENT**

    **A.    The Seriousness of the Offense and the Need to Provide Just Punishment Support the Government's Recommended Sentence**

Defendant's criminal conduct in this case is serious, as he fraudulently sought to obtain pandemic-related loans offered to address emergency and disaster relief to those businesses affected by the COVID-19 pandemic.

The COVID-19 pandemic was a serious public health crisis, and it had profound economic ramifications. Defendant's exploitation of the crisis not only cost the government, the SBA, and affiliated lenders time and money, but also diverted funds that could have been used the way PPP loans were intended: to assist struggling businesses and to keep people employed. Instead, defendant used fake documents, falsified supporting information, and defunct companies to take money that was earmarked for legitimate small businesses and dissipate it for his own personal enrichment. And this was not a victimless crime. In the interest of pushing out relief funds to businesses and individuals in need as the pandemic was gripping the nation, the government and its affiliated lenders relied heavily on the good faith and fair dealing of American citizens who applied for relief funds. But instead of working with the system, defendant took advantage of it by lying and cheating. Moreover, the PPP and EIDL programs were not a limitless pot of money. By taking money he was not entitled to, defendant defrauded taxpayers who helped fund the program and the SBA which guarantees these loans, and also

3

potentially made it more difficult for legitimate loan applicants to obtain pandemic relief funds.

Furthermore, defendant's fraud was not an impulsive one-off; he applied for 12 different loans to which he knew he was not entitled, and knowingly submitted false documents attesting to these defunct companies, payroll expenses, tax payments, and other financial information. As such, defendant's conduct, which through the diversion of relief money caused direct harm to a vulnerable public, warrants a meaningful custodial sentence.

### B. The Need for Deterrence Supports the Government's Recommended Sentence

Defendant's age and lack of recent criminal history supports the conclusion that he is unlikely to recidivate. However, defendant exhibited opportunistic criminal tendencies when confronted with a chance to obtain money from a government relief program under seemingly, at the time, less than stringent controls and even worked with others to facilitate his crimes. This fact necessitates a degree of specific deterrence and thus supports the government's recommended custodial sentence.

A significant sentence is also necessary to provide general deterrence. Defendant's actions warrant commensurately significant consequences, both due to the seriousness of the offense and as a general deterrent to send a message to the broader public that taking advantage of a national emergency to enrich oneself at the public expense will result in serious consequences. Given that criminal conduct like defendant's is typically more difficult to detect and prosecute than sudden crimes of passion or opportunity, there is a greater need for general deterrence. See, e.g., United States v.

4

Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation marks omitted)); United States v. Heffernan, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."). Here, the government's proposed sentence will help to deter other fraudsters, like defendant, who believe that they can generate income through fraudulent schemes against government agencies during a time of crisis.

### C. The Need to Avoid Unwarranted Sentencing Disparities Among Similarly Situated Defendants Supports the Government's Recommended Sentence

Section 3553(a)(6) directs the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The Government therefore notes for the Court's awareness that one defendant, Jeffrey Scott Hedges, in related case (22-CR-85-DSF) is set for sentencing on January 30, 2023 for similar conduct. In light of all the relevant facts, the government believes that a sentence of 51 months imprisonment for this defendant would avoid any unwarranted sentencing disparities.

### D. Restitution

Restitution is applicable pursuant to 18 U.S.C. § 3663A. (PSR ¶¶ 106-107.) The Mandatory Victim Restitution Act ("MVRA") requires a district court to order restitution when (1) a defendant commits an "offense against property," and (2) there is an identifiable "victim." 18 U.S.C. § 3663A(a)(1), (c)(1). The scheme to submit fraudulent PPP and EIDL loan applications to the SBA and

affiliated lenders is an offense against the property of the United States.  The MVRA provides for "restitution to each victim in the full amount of each victim's losses," and restitution must be determined "without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A).  The amount of restitution due in this case, measured by the amount that the defendant received in PPP and EIDL loan proceeds, is $1,071,222.  (PSR ¶¶ 91, 106; Plea Agreement ¶ 6.)

**IV.  CONCLUSION**

For the foregoing reasons, the government believes that a sentence of 51 months imprisonment, a three-year term of supervised release, a restitution order in the amount of $1,071,222, and a special assessment of $100 is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).